UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TAMMY LYNN EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 3:17-CV-475-DCP |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Plaintiff subsequently filed a Reply [Doc. 25] to Defendant's motion.

Tammy L. Evans ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits on October 25, 2014 [Tr. 175], and subsequently protectively filed an application for supplemental security income benefits on

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

January 20, 2015 [Tr. 178], pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on August 6, 2014. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 124]. A hearing was held on August 17, 2016. [Tr. 36–72]. On September 16, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 10–17]. The Appeals Council denied Plaintiff's request for review on October 11, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 6, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since August 6, 2014, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: the residual effects of a left navicular fracture, left peroneal nerve neural lysis, left ankle lateral ligament reconstruction; lumbago, panic disorder, post-traumatic stress disorder, depression; bipolar disorder, and anxiety (20 CFR 404.1520(c). and 416.921(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following limitations: occasional climbing ladders, ropes, and scaffolding; frequent climbing ramps and stairs; frequent balancing; occasional stooping; frequent kneeling, crouching, and crawling; work limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced work; involving only simple work-related decisions; few, if any, workplace changes; and only occasional interaction with the public, coworkers, and supervisors.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on March 11, 1971 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from August 6, 2014, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 12–17].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.   DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be

4

considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff challenges the ALJ's finding that she was not disabled, as she asserts that the ALJ did not properly analyze the opinion of her treating physician, Dr. Paul D'Cruz, as required by the treating physician rule. [Doc. 18 at 17–20]. Additionally, Plaintiff claims that the ALJ's decision is not supported by substantial evidence because he failed to adequately consider all of the medical evidence of record. [*Id.* at 20–24]. Further, Plaintiff asserts that the ALJ selectively relied on portions of the record to discredit her subjective complaints, and failed to appropriately consider the objective evidence supporting her symptoms. [*Id.* at 23–24]. Lastly, Plaintiff maintains that the ALJ improperly gave "significant weight" to the opinions of the nonexamining state agency consultants who did not review the entire record. [*Id.* at 24]. The Court will address Plaintiff's specific allegations of error in turn.

### A. Plaintiff's Mental Impairments

Plaintiff claims that the ALJ failed to provide good reasons for assigning little weight to Dr. D'Cruz's opinion; as despite her extensive treating relationship with Dr. D'Cruz, "the ALJ discounted the evidence with only a short and conclusory statement." [Doc. 18 at 18]. Plaintiff maintains that although the ALJ found that Dr. D'Cruz's opinion described severe symptoms "from a brief period of exacerbation and are inconsistent [with] the other reports," the ALJ failed

6

to describe how he arrived at this conclusion. [*Id.*]; *see* [Tr. 16]. Plaintiff also asserts that the ALJ failed to consider the entire record with respect to her mental health treatment. [Doc. 18 at 21].

The Commissioner claims that the ALJ properly found that other than a brief period of exacerbation, Dr. D'Cruz's treatment notes and the medical record did not reflect the severity of the symptoms detailed in his opinion. [Doc. 24 at 25]. Further, the Commissioner asserts that the ALJ's discussion of the medical evidence demonstrates that the ALJ considered the entire record, and thus, he was not required to extensively cite Plaintiff's entire treatment record with Dr. D'Cruz and Cherokee Health Systems. [*Id.* at 26]. In response, Plaintiff claims that the Commissioner attempts to provide *post hoc* rationalizations for the ALJ's failure to appropriately consider Dr. D'Cruz's opinion. [Doc. 25 at 3].

Plaintiff first began treatment with Dr. D'Cruz at Cherokee Health Systems on August 30, 2010, where she reported previously being diagnosed with bipolar disorder and that she suffered from depression. [Tr. 558]. Dr. D'Cruz saw her until September 2011, when Plaintiff's primary care physician took over prescribing her psychotropic medications. [Tr. 554-55]. Dr. D'Cruz began treating Plaintiff again in September 2014 following a referral to Cherokee Health Systems from her treating physician, Hollis Cotton, M.D. [Tr. 519, 555]. Plaintiff stopped working on August 6, 2014 [Tr. 204], and saw Dr. Cotton on August 13, 2014, complaining of stress and depression, in addition to her physical impairments [Tr. 509]. Dr. Cotton noted that Plaintiff was prescribed daily medication to treat her depression [Tr. 513]. On September 4, 2014, Plaintiff was seen by Jean Patterson, LCSW at Cherokee Health Systems at the request of Dr. Cotton [Tr. 519]. Plaintiff then began mental health treatment with Dr. D'Cruz and Ms. Patterson, and was diagnosed with mood disorder, unspecified, rule out bipolar disorder, not otherwise specified, and a mild form of spina bifida. [*Id.*].

7

Plaintiff returned to see Dr. D'Cruz on November 26, 2014 for management of her medication, and Dr. D'Cruz diagnosed mood disorder, not otherwise specified, ruled out bipolar disorder, type II, and mild obsessive-compulsive disorder [Tr. 553]. Plaintiff then began regular treatment with Ms. Patterson, as the Government documented treatment notes for 43 visits from September 4, 2014 through June 14, 2016. *See* [Doc. 24 at 14]. These treatment notes reflect depression, low energy, lack of motivation, and an overwhelmed feeling, as well as that Plaintiff's father was near death and that she took care of him every weekend. [Tr. 1100]. However, the Government also details that the initial treatment note states that Plaintiff had "just quit her job as [a] pharm tech" because of a "conflict with [her] boss." [*Id.*]. Plaintiff continued to see Dr. D'Cruz to manage her medication. [Tr. 556].[2]

On April 8, 2016, Dr. D'Cruz and Ms. Patterson co-wrote a letter detailing Plaintiff's therapy and psychiatric services through Cherokee Health Systems. [Tr. 577]. The opinion stated that Plaintiff was compliant with appointments, medications, and treatment; as well as that she had been diagnosed with bipolar disorder, mood disorder, obsessive compulsive disorder, and agoraphobia with panic. [*Id.*]. Additionally, Dr. D'Cruz noted that Plaintiff was being considered for a possible diagnosis of post-traumatic stress disorder. [*Id.*]. The opinion detailed the mental health symptoms that Plaintiff experienced as a result of these diagnoses. [Tr. 577–78]. However, the descriptions of the symptoms for panic disorder, agoraphobia, bipolar disorder, obsessive compulsive disorder, mood disorder, and post-traumatic stress disorder were general descriptions, and did not specifically discuss Plaintiff. [*Id.*].

---

[2] Both parties have extensively documented the medical record with respect to Plaintiff's mental and physical impairments. The Court has reviewed the briefs and medical record, and will only discuss the most pertinent portions of the record.

The opinion then stated that Plaintiff "also has some severe back, hip, leg and foot problems" which "negatively impact her mental stability." [Tr. 578]. Dr. D'Cruz and Ms. Lawrence noted that Plaintiff found it "difficult to sit, lie down[,] or stand without severe pain and this has led to behavioral deactivation." [*Id.*]. Lastly, the opinion stated that Plaintiff's "mental health diagnoses are severe and will be ongoing, requiring continual medications and therapy to help stabilize her." [Tr. 580].

On January 2, 2015, state agency psychological consultant Brad Williams, M.D., reviewed the evidence of record at the initial level of the agency's review. [Tr. 73–81]. With respect to Plaintiff's mental limitations, Dr. Williams stated that Plaintiff alleged bipolar disorder, depression, and mood swings, but found that Plaintiff had no severe mental impairments. [Tr. 78]. Dr. Williams opined that Plaintiff had mild limitations in the restriction of activities of daily living, maintaining social functioning, as well as maintaining concentration, persistence, or pace. [*Id.*]. At the reconsideration level of the agency's review, on February 11, 2015, state agency psychological consultant Douglas Robbins, Ph.D. reached the same conclusions. [Tr. 91–93].

In the disability decision, the ALJ first found that Plaintiff's panic disorder, post-traumatic stress disorder, depression, bipolar disorder, and anxiety all qualified as severe impairments. [Tr. 12]. When determining Plaintiff's RFC, however, the ALJ stated that the severity of Plaintiff's complaints "exceeds what is reasonably expected in light of the objective findings." [Tr. 15]. The ALJ noted that treatment records show "mild to moderate psychological symptoms, with the exception of some brief exacerbations." [*Id.*].

Next, the ALJ found that Plaintiff had the following mental limitations: work limited to simple, routine and repetitive tasks; performed in a work environment free of fast-paced work; involving only simple work-related decisions; few, if any, workplace changes; and only occasional

9

interaction with the public, coworkers, and supervisors. [*Id.*]. The ALJ stated that these limitations were consistent with and supported by Dr. Cruz's reports, as well as other treatment notes from Cherokee Health Systems. [*Id.*]. Additionally, the ALJ summarized these reports as demonstrating that Plaintiff had been treated for a variety of psychological symptoms beginning several years before the alleged onset date, and that she was able to work full-time despite these symptoms for several years. [*Id.*]. The ALJ found that there was "no clear evidence of significant, sustained, worsening of her mental impairments." [*Id.*]. Lastly, the ALJ assigned little weight to Dr. Cruz's April 8, 2016 letter, finding that although it describes more severe symptoms, "they appear to be from a brief period of exacerbation and are inconsistent [with] the other reports." [*Id.*].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).[3] However, the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* §§ 404.1527; 416.927.

specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

The Court notes that an ALJ "has final responsibility for deciding an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.'" *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96-5p, 1996 WL 1374183, at *2 (July 2, 1996)). In the present case, Dr. D'Cruz's letter does not opine in depth on Plaintiff's functional limitations due to her mental impairments; rather, it states that Plaintiff's physical impairments impact her mental stability, lists and describes Plaintiff's diagnosed mental impairments, and states that her mental health diagnoses are severe.[4] The ALJ assigned little weight to Dr. D'Cruz's opinion, and failed to address the

---

[4] The April 8, 2016 letter constitutes an opinion from Plaintiff's treating psychologist, Dr. D'Cruz, as medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis . . . ." 20 C.F.R. § 404.1527(a)(1); *see also Fairchild v. Colvin*, 14 F. Supp. 3d 908, 917 n.5 (S.D. Ohio 2014) (finding that because a treating psychiatrist "signed off" on statements given by a licensed social worker, those statements were considered the opinion of the treating psychiatrist).

11

weight assigned to the opinions of the nonexamining state agency psychological consultants.

However, "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). In this regard, the ALJ does not detail his reasoning or support for the mental limitations set forth in Plaintiff's RFC. The ALJ stated that his conclusions were consistent with and supported by Dr. D'Cruz's and Ms. Patterson's reports, although he does not discuss the extensive mental health treatment records in any detail. *See, e.g.*, *Hogston v. Comm'r of Soc. Sec.*, No. CIV.A. 12-12626, 2013 WL 5423781, at *12 (E.D. Mich. Sept. 26, 2013) (noting "the ALJ's discussion of Dr. Pinson's treatment—beyond doing little more than effectively listing each of Dr. Pinson's findings—included no discussion of Dr. Pinson's opinion, particularly as it related to Plaintiff's mental impairments"). While the ALJ found that Plaintiff's panic disorder, post-traumatic stress disorder, depression, bipolar disorder, and anxiety were severe impairments, the ALJ did not review the medical record with respect to these impairments, or explain his findings on the functional limitations of these mental impairments. *See, e.g., Evans v. Comm'r of Soc. Sec.*, No. 1:10–cv–779, 2011 WL 6960619, at *14, 16 (S.D. Ohio Dec. 5, 2011) (remanding where the Court was "unable to discern from the ALJ's opinion how he arrived at the RFC decision and what evidence he relied on in making that decision," explaining that "[s]imply listing some of the medical and other evidence contained in the record and setting forth an RFC conclusion without linking such evidence to the functional limitations ultimately imposed in the RFC is insufficient to meet the 'narrative discussion' requirement of SSR 96–8."), *report and recommendation adopted by*, 2012 WL 27476 (S.D. Ohio Jan. 5, 2012).

This lack of detailed reasoning is compounded by the fact that the ALJ's RFC determination with respect to Plaintiff's mental impairments was not based upon any medical

12

opinion. Although an ALJ is not required to base his opinion on any medical opinion, *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013), the ALJ assigned little weight to Dr. D'Cruz's opinion and did not discuss the weight assigned to the opinions of Dr. Williams and Dr. Robbins—the nonexamining state agency psychologists.

Further, the ALJ failed to explain how Dr. D'Cruz's opinion, which the ALJ found described more severe symptoms, was not supported by the remainder of Plaintiff's mental health treatment records. The ALJ stated that "[t]here is no clear evidence of significant, sustained, worsening of her mental impairments," while also discounting the severe symptoms detailed in Dr. D'Cruz's opinion because "they appear to be from a brief period of exacerbation and are inconsistent [with] the other reports." [Tr. 15]. Although the ALJ found that several of Plaintiff's mental health impairments were severe impairments, he based the assessed mental limitations, in part, on Plaintiff's ability to work for several years despite her mental health treatment. First, the Court notes that an ALJ is not required to discuss every piece of evidence in the medical record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) ("[A]n ALJ can consider every piece of evidence without addressing [all the evidence] in his opinion."). The ALJ, however, subsequently failed to discuss or review Plaintiff's treatment records in any detail, especially her mental health treatment after leaving her job and the death of her father—a period which Plaintiff claims resulted in her "worsening mental health." [Doc. 18 at 19].

In support of her argument, Plaintiff points to several examples in the medical record. After Plaintiff was referred by Dr. Cotton to Ms. Patterson for an evaluation, her clinical assessment on September 4, 2014, was "Mood Disorder, Unspec" and "Rule Out [] Bipolar Disorder, NOS." [Tr. 519]. These diagnoses, as well as mild obsessive-compulsive disorder, were confirmed by Dr. D'Cruz on November 26, 2014. [Tr. 553]. Dr. D'Cruz noted that Plaintiff endorsed an

13

improvement in her depression, but that she was having anxiety. [*Id.*]. When reporting to Dr. D'Cruz for management of her medication on May 25, 2015, Plaintiff reported that she was doing poorly, Dr. D'Cruz noted that her mood was anxious, irritable, and depressed, and changed her medication. [Tr. 729]. On June 23, 2015, Dr. D'Cruz noted that Plaintiff's symptoms were worsening [Tr. 727], although he also stated that Plaintiff had decided to stop taking one of her prescribed medications, Effexor, in March of 2015. [Tr. 754–56]. Dr. D'Cruz noted on November 2, 2015 that Plaintiff reported that her mood and anxiety were better after a change in medication. [Tr. 721].

Then, on January 28, 2016, Plaintiff continued to report an increase in anxiety, obsessive compulsive disorder, and depression, in part due to the death of her father. [Tr. 719]. On February 19, 2016, Plaintiff claimed that her depression was much worse, to the point where it was "paralyzing," and that she was unable to get out of bed. [Tr. 736]. During her next visit with Dr. D'Cruz, on April 27, 2016, Plaintiff reported that she was feeling more depressed and anxious and that she constantly worries, although Dr. D'Cruz noted that Plaintiff had chosen to cut back on her prescribed Prozac. [Tr. 718]. Lastly, on June 14, 2016, Ms. Patterson noted that Plaintiff was still grieving the death of her father, was depressed and anxious, as well as worrying constantly, and that her obsessive-compulsive disorder was fairly severe. [Tr. 1309].

Ultimately, due to the ALJ's conclusory discussion of Plaintiff's mental impairments and the medical record, the Court is unable to follow the ALJ's reasoning that Plaintiff's mental impairments did not result in a significant, sustained worsening of her symptoms, while also discrediting Dr. D'Cruz's opinion detailing more severe symptoms because it described a brief period of exacerbation. *See Johnson v. Comm'r of Soc. Sec.*, No. 1:14-CV-672, 2015 WL 5714522, at \*4 (W.D. Mich. Sept. 29, 2015) ("By failing to address plaintiff's treatment history from April

14

2011 through November 2012, the ALJ has failed to articulate an analysis of the evidence which allows this Court to trace the path of her reasoning."); *Johnson v. Comm'r of Soc. Sec.*, No. 1:12-CV-66, 2013 WL 1249225, at *17 (E.D. Tenn. Feb. 28, 2013) (holding that "[i]t may be that the ALJ's ultimate conclusion was correct; however, upon close review of the ALJ's decision and the inadequacy of explanations given for some of his determinations, [the Court] cannot conclude the ALJ's decision was supported by substantial evidence"), *report and recommendation adopted by*, 2013 WL 1247681 (E.D. Tenn. Mar. 26, 2013).

The Commissioner claims that the ALJ properly analyzed Dr. D'Cruz's medical opinion by finding that other than a brief period of exacerbation, Dr. D'Cruz's records, along with Plaintiff's entire treatment at Cherokee Health Systems, did not support the severe symptoms in the opinion. [Doc. 24 at 25]. Further, the Commissioner asserts that the ALJ was not required to extensively discuss the entire record where it is clear that the ALJ considered the entire record. [*Id.* at 26]; *see Rudd v. Comm'r*, 531 F. App'x 719, 730 (6th Cir. 2013).

In the present case, it is not clear to the Court that the ALJ's "factual findings as a whole show that [he] implicitly considered the record as a whole." *Id.* The Commissioner maintains that the ALJ "acknowledged that Plaintiff's impairments had worsened," as he found more significant limitations than the nonexamining state agency psychological consultants, as well as finding several of Plaintiff's mental impairments to be severe. [Doc. 24 at 27]. The ALJ, however, failed to discuss the medical record regarding the worsening of Plaintiff's mental impairments, what period qualified as a brief exacerbation, or how the medical record did not support the more severe symptoms in Dr. D'Cruz's opinion. Additionally, the ALJ did not identify any specific inconsistencies between Dr. D'Cruz's opinion and the medical record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (holding there must be some effort to "identify the

15

substantial evidence that is purportedly inconsistent" with the opinion of a treating physician if the opinion is not assigned controlling weight); *Zanders v. Comm'r of Soc. Sec.*, No. 1:13-CV-137, 2014 WL 272165, at *6 (S.D. Ohio Jan. 23, 2014) ("When a treating physician cites to specific objective findings in support of his opinion, it is incumbent upon the ALJ to explain, with citations to the record, why he believes those objective findings are 'conclusory' or do not support the treating physician's opinion to enable this Court to engage in meaningful review of the decision."), *report and recommendation adopted by*, 2014 WL 695841 (S.D. Ohio Feb. 24, 2014). Therefore, the Court cannot rely upon the Commissioner's *post hoc* rationalizations to support the ALJ's RFC determination. *See, e.g.*, *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) ("Thus, the Commissioner's post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning his omission in considering the opinion of plaintiff's treating physician."), *report and recommendation adopted by*, 2013 WL 1294127 (E.D. Mich. Mar. 29, 2013).

Ultimately, the ALJ failed to appropriately review the medical record to support his reasoning that this "brief period of exacerbation" did not constitute "significant, sustained, worsening of her mental impairments," as well as for the Court to determine the basis for the mental limitations in the RFC determination. [Tr. 15]; *see, e.g.*, *Campbell v. Berryhill*, No. 3:15-CV-551-TAV-CCS, 2017 WL 1024338, at *10 (E.D. Tenn. Mar. 15, 2017) ("Here, the Court is unable to determine why certain limitations assessed by Dr. Blaine are an overestimate of plaintiff's abilities, particularly where it is not entirely clear to begin with which limitations were accepted and which were rejected. As evidenced by the parties' arguments, for example, the record contains conflicting evidence regarding plaintiff's manipulative abilities. Therefore, without further explanation from the ALJ, the Court is unable to trace the ALJ's path of reasoning.").

Further, although the ALJ found that the RFC was consistent with the reports of Dr. D'Cruz and Plaintiff's mental health treatment at Cherokee Health Systems, he did not detail what the assessed limitations were based on, or how they were supported by the record. Accordingly, the Court cannot conduct a meaningful review of the disability decision, and thus the ALJ's decision is not supported by substantial evidence. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011).

### B. Plaintiff's Remaining Claims

As the Court has already found that it cannot conduct a meaningful review of the ALJ's decision with respect to the mental limitations in Plaintiff's RFC, on remand, the ALJ should consider the remainder of Plaintiff's arguments. The ALJ should ensure to review the entire medical record with respect to Plaintiff's physical and mental impairments and appropriately weigh the opinions of Plaintiff's treating physician and the nonexamining state agency consultants.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to reconsider the medical evidence of record in the RFC determination consistent with this opinion.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge